**IT IS ORDERED as set forth below:**

**Date: January 24, 2024**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | |
| | CASE NO. 22-41308-BEM |
| Joseph Andrew Corona, | |
| Debtor. | CHAPTER 11 |
| | |
| Lonnie Cox, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 23-04001-BEM |
| Joseph Andrew Corona, | |
| Defendant. | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Joseph Andrew Corona's ("Defendant") Motion for Summary Judgment (the "Motion") filed on September 27, 2023. [Doc. 27]. Plaintiff Lonnie Cox filed his Response [Doc. 33], and Defendant filed his Reply [Doc. 36].

1

Defendant seeks summary judgment on all claims in the complaint, including (1) determination of dischargeability under 11 U.S.C. § 523(a)(4); (2) determination of dischargeability under § 523(a)(6); and (3) determination of dischargeability of attorney's fees and punitive damages previously awarded to Plaintiff.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(a), (c); Fed. R. Bankr. P. 7056. The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party shows no genuine dispute of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). For issues on which the moving party would bear the burden of proof at trial, the movant "must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013). When, as here, "the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by either (1) negating an essential element of the non-movant's case or (2) by showing that there is no evidence to prove a fact necessary to the non-movant's case."

*Wynn v. Paragon Systems, Inc.*, 301 F. Supp. 2d 1343, 1349-50 (S.D. Ga. 2004) (citing *Clark*, 929 F.2d at 606-08); see also *Celotex*, 477 U.S. at 323, 325, 106 S. Ct. at 2553, 2554 (stating that Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim" but that the moving party may satisfy its burden by "pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case."); see also *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. *Hairston v. Gainesville Sun Publ'g. Co*., 9 F.3d 913, 918 (11th Cir. 1993). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.*

## II.        UNDISPUTED MATERIAL FACTS

Defendant filed a Statement of Material Facts Not in Dispute ("Defendant's Statement"). [Doc. 28]. Plaintiff filed a Response to Defendant's Statement [Doc. 31] as well as a Statement of Additional Material Facts in Opposition to Debtor/Defendant's Motion for Summary Judgment. [Doc. 32]. Defendant did not file a response or otherwise controvert Plaintiff's additional facts. Plaintiff objects generally to Defendant's Statement on the basis that it did not support the facts asserted therein by citing to "particular parts of materials in the record" as required by Fed. R. Civ. P. 56(c)(1).

Federal Rule of Bankruptcy Procedure 7056 which incorporates Federal Rule of Civil Procedure 56 ("Rule 56") requires that,

> [a] party asserting that a fact cannot be… genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

3

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). See also Bankruptcy Local Rule ("BLR") 7056-1(a)(3) (requiring parties to a summary judgment motion to "clearly identify" record materials the party relies on, including providing "dates and specific page numbers" where appropriate).

Defendant's Statement of Material Facts includes no citations to the record, discovery materials, affidavits, or any other evidence except referencing the Arbitration Proceeding and Corrected Arbitration Award (the "Arbitration" and the "Award", respectively). [Doc. 28]. Defendant does not provide any direct page or paragraph citations when referencing the Award. Defendant's lack of support for his factual assertions is in contravention of the requirements of Rule 56(c)(1) to prevail on a motion for summary judgment. However, even without record cites, to the extent Plaintiff has not controverted the facts in Defendant's Statement, those facts are deemed admitted. BLR 7056-1(a)(2). Furthermore, under Rule 56(c)(3), while the "court need consider only the cited materials, … it may consider other materials in the record." Because the Court is quite familiar with the Award, as it has been central to disputes in Defendant's main bankruptcy case, and because this proceeding needs to move along, the Court will exercise its discretion and consider the Motion notwithstanding Defendant's failure to strictly comply with the Rules for citing to the record[1]. With respect to the numerous legal conclusions contained in Defendant's Statement of Material Facts, these will not be considered by the Court. [See e.g. Doc. 28, ¶ 23-4]; BLR 7056-1(a); see *Transamerica Life Ins. Co. v. Bell*, No. 1:19-CV-1552-MHC, 2020 WL 1800723, at *2 (N.D. Ga. Feb. 3, 2020). In

---

[1] Defendant should not take the Court's exercise of discretion in this proceeding as an indication that the Court does not and will not require strict compliance with the Rules and the BLRs in this or other proceedings.

accordance with the foregoing and based on the Parties' papers, the Court finds the following facts are material and undisputed.

In 2014, Plaintiff and Defendant (the "Parties") entered into a business relationship to create Cornerstone Contracting Group, Inc. ("Cornerstone"). [Docs. 28, ¶ 1; 31, ¶ 1; 32, ¶ 1]. The Parties entered into a Pre-Incorporation Agreement regarding the formation and operation of Cornerstone, which did not set forth the specific ownership interests of Plaintiff and Defendant, but the Parties operated with the understanding that Defendant was 70% owner and Plaintiff was 30% owner. [Docs. 28, ¶ 2-3; 31, ¶ 2-3; 32, ¶ 2, 4]. In 2016, the Parties executed a handwritten Addendum to amend and supplement the Pre-Incorporation Agreement (the "Pre-Incorporation Agreement" and the "Addendum", respectively, and collectively, the "Agreement") which included a provision whereby Plaintiff had a "right of first refusal" for drywall and acoustical subcontracts of Cornerstone. [Docs. 28, ¶ 4-5; 31, ¶ 4-5; 32, ¶ 2]. Defendant took most of the responsibility for the day-to-day operations of Cornerstone and Plaintiff acted primarily through his business of Cox Commercial Interiors ("CCI") under the Right of First Refusal. [Docs. 28, ¶ 7-8; 31, ¶ 8; 32 ¶ 6].

The business relationship between the Parties deteriorated and Plaintiff initiated the Arbitration against Defendant and Cornerstone in which he asserted breach of contract and breach of fiduciary duty claims against Defendant and that resulted in the Award being entered on September 6, 2022. [Docs. 28, ¶ 9-10; 31, ¶ 9-10; 32, ¶ 3,]. Pursuant to the Award, Plaintiff was awarded $4,294,734.44 in monetary damages against Defendant, including $2,553,991.00 for breach of contract, $433,785.81 for breach of fiduciary duty, $956,957.63 for expenses of litigation, and $350,000.00 in punitive damages. The Award also imposed non-monetary damages, including requiring Defendant (1) to honor Plaintiff's right of first refusal, (2) to hold Cornerstone "shareholder meetings annually and director meetings quarterly, and to issue

financial statements to shareholders quarterly", and (3) "[t]o distribute to all shareholders at the same time in their appropriate share, and to calculate the amounts of distribution no later than March 31 of the following year." [Docs. 28, ¶ 11, 13; 31, ¶ 11, 13; 32, ¶ 16, Exhibit A, pg. 6]. In the Arbitration, Plaintiff did not assert claims of embezzlement, conversion or other intentional torts against Defendant, and all requested relief by Plaintiff against Cornerstone was denied and those claims were dismissed. [Docs. 28, ¶ 12, 20; 31, ¶ 12, 20]. The award of expenses of litigation in the Award arose from the alleged conduct of Defendant in the Arbitration. [Docs. 28, ¶ 22; 31, ¶ 22]. Plaintiff sought to confirm the Award in the Superior Court of Fulton County ("Superior Court"), but prior to confirmation of the Award, Defendant filed his bankruptcy petition. [Docs. 3, ¶ 33-4; 5, ¶ 33-4]. On October 28, 2022, Plaintiff sought limited relief from the automatic stay in Defendant's bankruptcy case to request confirmation of the Award in the Superior Court, which was granted by this Court on November 22, 2022. [Docs. 3, ¶ 35-6; 5, ¶ 35-6]. On December 19, 2022, the Superior Court granted Plaintiff's motion to confirm the Award and entered an order confirming the Award. [Docs. 3, ¶ 37, Exhibit B; 5, ¶ 37]. On January 3, 2023, Plaintiff then filed a Proof of Claim in Defendant's bankruptcy case embodying the claims arising from the Award. [Docs. 3, ¶ 39; 5, ¶ 39].

Subsequently on January 17, 2023, Plaintiff filed his Adversary Complaint and his Amended Complaint on January 18, 2023, commencing this adversary proceeding. [Docs. 1; 3; 28, ¶ 15; 31, ¶ 15].

III.         **LEGAL ANALYSIS**

Defendant seeks summary judgment on each of Plaintiff's claims under § 523(a)(4) and (a)(6). In the Motion, Defendant argues that he is entitled to summary judgment on Plaintiff's claim for embezzlement under § 523(a)(4) because the Complaint "alleges no facts and states no claims that are outside of the findings and conclusions" in the Award and "Plaintiff had

the opportunity to assert this" claim in the Proceeding and chose not to do so. [Doc. 29, pg. 4, 10-11]. Alternatively, Defendant argues that if the Court finds Plaintiff is entitled to a trial on the embezzlement claim, that Plaintiff's damage award is limited to the amount of damages awarded in the Arbitration Proceeding for breach of fiduciary duty. [Doc. 29, pg. 12-13].

Defendant is incorrect about Plaintiff's ability to bring claims under § 523 because, by seeking a determination of dischargeability, Plaintiff is not asserting a claim that could have been brought in the Arbitration. Plaintiff's claims have already been liquidated and the only question is whether the facts giving rise to the damages awarded in the Arbitration also meet the test for an exception to discharge, which was not at issue in the Arbitration. See *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672, 676 (11th Cir. 1993) ("While collateral estoppel [issue preclusion] may bar a bankruptcy court from relitigating factual issues previously decided in state court, … the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court[.]"); *Brown v. Felsen*, 442 U.S. 127, 135, 138, 99 S. Ct. 2205, 2211-12 (1979) (when the bankruptcy court is determining the dischargeability of a state court judgment, it may decline to apply res judicata (claim preclusion) and may consider evidence outside the state court record because dischargeability issues are not necessarily identical to the issues arising under state law) (decided under § 17 of the Bankruptcy Act, which is the predecessor to § 523(a) of the Bankruptcy Code).

As stated in *St. Laurent,* issue preclusion applies in dischargeability proceedings. This Court must treat the Superior Court Order adopting the Award with the same preclusive effect that the Order would be given in the state in which it was rendered. *Lewis v. Lowery (In re Lowery),* 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010) (Hagenau, J.). Under Georgia law, collateral estoppel applies when the following elements are met: 1) there is an identity of parties between the two cases; 2) there is an identity of issues between the two cases; 3) the issue in question was

actually and finally litigated; 4) the adjudication was essential to the earlier action; and 5) the parties had a full and fair opportunity to litigate the issues in question. *Bradsher v. Watson* (*In re Watson*)*,* No. 18-69905, AP 19-51272019 WL 5388061, *3 (Bankr. N.D. Ga. Oct. 18, 2019) (Ellis-Monro, J) (rev'd in part on other grounds) (citing *Lowery,* 440 B.R. at 921; *Lusk v. Williams* (*In re Williams*), 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (Mullins, J.)).

Here, issue preclusion applies to the extent of the facts established in the Award because the parties are identical in each action. The issues regarding Defendant's misuse of funds are the same that is, whether Defendant used corporate funds for personal expenses and the amount of money that was converted to personal use. The prior litigation was fully litigated to final judgment entered by the Superior Court which has not been appealed and is final. And, the parties had a full and fair opportunity to litigate in the Arbitration. That being the case the factual findings of the Arbitrator are binding in this proceeding. Further, discussion of allocation of damages established in the Arbitration is premature as the Award did not allocate damages in a way that aligns with the claims asserted under the Bankruptcy Code such that any such allocation will require additional evidence. That said, the Court can determine that any amount attributable to actions that present claims under § 523 is or is not dischargeable and determine a specific amount allocable to that claim upon evidence of such damages.

Section 523(a) of the Bankruptcy Code excepts certain debts from discharge, including debts: "(a)(4) for fraud or defalcation while acting in a fiduciary capacity, [and] embezzlement …; [and] … (a)(6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(4), (a)(6). "Exceptions to discharge are narrowly construed and the burden is on the creditor to prove non-dischargeability by a preponderance of the evidence." *Flemm v. Trexler* (*In re Trexler*), 528 B.R. 842, 848 (Bankr. N.D. Ga. 2015) (Hagenau, J.) (citing *Duncan v. Bucciarelli* (*In re Bucciarelli*), 429 B.R. 372, 375

8

(Bankr. N.D. Ga. 2010)). With respect to Count I of the Amended Complaint, the Court finds Defendant has carried his burden as to the claim of fraud or defalcation while acting in a fiduciary capacity (the "Fiduciary Capacity Exception") but has failed to carry his burden on the embezzlement claim under § 523(a)(4). With respect to Count II for willful and malicious injury by Defendant to another entity or the property of another entity under § 523(a)(6) and Count III for nondischargeability of attorney's fees and punitive damages, Defendant has failed to carry his burden to show he is entitled to summary judgment on those counts.

### A.    Section 523(a)(4)

### 1.        Fiduciary Capacity Exception

Defendant argues he is entitled to summary judgment on Plaintiff's claim under the Fiduciary Capacity Exception because any fiduciary relationship between Plaintiff and Defendant is not the type of fiduciary capacity contemplated by § 523(a)(4). The Court agrees.

To succeed on a claim under the Fiduciary Capacity Exception, Plaintiff must first establish that "the debtor held a fiduciary position in relation to the plaintiff under a technical, express, or statutory trust[,]" which is a question of federal law. *Sawyer v. Thompson* (*In re Thompson*), AP No. 19-5119, No. 18-69638-PMB, 2020 WL 2048006, *3 (Bankr. N.D. Ga. Apr. 28, 2020) (Baisier, J.); *Spring Valley Produce, Inc. v. Forrest* (*In re Forrest*), 47 F.4th 1229, 1236 (11th Cir. 2022); *Strategic Funding Source, Inc. v. Dodge* (*In re Dodge*), 623 B.R. 663, 667 (Bankr. N.D. Ga. 2020) (Bonapfel, J.). Thus, fiduciary capacity for purposes of § 523(a)(4) is narrowly construed to encompass "an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation." *Caitlin Energy, Inc. v. Rachel* (*In re Rachel*), 527 B.R. 529, 540 (Bankr. N.D. Ga. 2015) (Hagenau, J.) (quoting *Parker v. Ferland* (*In re Ferland*), No. 09-52455, AP 09-5101 2010 WL 2600588, at *3 (Bankr. M.D. Ga. June 21, 2010) (citation omitted)).

9

The Eleventh Circuit has established a three-part test to determine whether a defendant/debtor is acting in a fiduciary capacity under § 523(a)(4):

> First, the fiduciary relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries … Second, the fiduciary relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a technical trust. Based on our caselaw, the two most important trust-like duties, and the ones that we have held create a technical trust, are the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose. Third, the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.

*In re Forrest*, 47 F.4th at 1241; see *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993).

Under the Agreement, Plaintiff and Defendant were the only two owners and directors of Cornerstone, with Defendant as President and Plaintiff as Vice-President. [Doc. 32, Exhibit B, ¶ 5]. Defendant obtained a 70% ownership interest in the corporation and Plaintiff obtained a 30% ownership interest. [Docs. 28, ¶ 2-3; 31, ¶ 2-3; 32, ¶ 2, 4]. Defendant managed the day-to-day operations of the business, while Plaintiff primarily was involved in Cornerstone through the work done by his company CCI. [Docs. 28, ¶ 7-8; 31, ¶ 8; 32 ¶ 6; 32, Exhibit B ¶ 16]. Paragraph 3 of the Agreement ("Articles of Incorporation") does not identify which shares are voting shares nor does paragraph 5 ("Control") provide any further delineation of the shares between the parties. [Docs. 28, ¶ 7-8; 31, ¶ 8; 32, Exhibit B ¶ 3-5]. Paragraph 7 of the Agreement ("Initial Salaries for Officers and Salary Caps") provides that Plaintiff shall receive an initial salary of $1 per year as Vice-President of the corporation and Defendant is to receive an initial salary of $70,000 as President "should the revenues for the Corporation of that year less all expenses allow that amount to be paid without the Corporation incurring additional debt." [Doc. 32, Exhibit B, ¶ 7]. Defendant's salary in subsequent years will be determined by the parties but will not exceed $125,000; no specific provision is made for Plaintiff's salary after the initial year. [Doc. 32, Exhibit B, ¶ 7]. The only discussion of dividends and distributions provided for in the

10

Agreement appears in paragraph 15 titled "Termination of Lonnie Cox's Involvement and Ownership" which states:

> Lonnie Cox shall cease to be involved with the Corporation on December 31, 2022, provided that all accounting and appropriate disbursements of dividends shall be performed by that date. Further, on December 31, 2022, Lonnie shall sell his shares of Stock to Joseph Corona in consideration of One Dollar ($1), provided that all accounting and appropriate disbursements of dividends shall be performed by that date.

[Doc. 32, Exhibit B, ¶ 15]. This paragraph presumes that both parties have the ability to receive dividends from Cornerstone. This is consistent with Georgia law, which provides that all shareholders in the same class have identical rights, and the board of directors may authorize corporate distributions so long as they are not restricted by the corporation's articles of incorporation or bylaws. O.C.G.A. §§ 14-2-601(a), -640(a). However, no distributions can be made if the distribution would cause the corporation to be insolvent. *Id.* § 14-2-640(c). The Agreement provides further that CCI has a right of first refusal on all drywall and acoustical work to be performed by Cornerstone and both parties agreed to a non-compete clause until Plaintiff turns 62. [Doc. 32, Ex. B, addendum].

It is well established that serving as an officer or director of a Georgia corporation, a manager of a Georgia limited liability company, or partner in a Georgia partnership is not sufficient by itself to establish fiduciary capacity for purposes of § 523(a)(4). *In re Thompson*, 2020 WL 2048006 at *4; *see also Hinton v. Blocker* (*In re Blocker*), No. 18-69243, AP 19-5117, 2020 WL 247311 at *6-7 (Bankr. N.D. Ga. Jan. 15, 2020) (Ellis-Monro, J.) (holding manager and member of limited liability corporation did not hold trust-like duties sufficient to satisfy federal test for fiduciary status); *Tarpon Point, LLC v. Wheelus* (*In re Wheelus*), No. 07-30114, AP 07-3022, 2008 WL 372470 at *3 (Bankr. M.D. Ga. 2008) (manager of limited liability company is not a fiduciary); *Davis v. Conner* (*In re Conner*), No. 09-30750, AP 09-3033, 2010 WL 1709168

11

at *4 (Bankr. M.D. Ga. 2010) (state law judgment for breach of fiduciary duty by a partner did not establish fiduciary capacity for purposes of § 523(a)(4)); *Millburn Partners, LLC v. Miles* (*In re Miles*), No. 09-92601, AP 10-6229, 2011 WL 1124183 at *4 (Bankr. N.D. Ga. 2011) (Murphy, J.) (officer and director is not a fiduciary).

Further, Georgia statutes like O.C.G.A. §§ 14-2-830 and 14-2-842, which set forth the standards for directors and officers of Georgia corporations, respectively, do not impose a "heightened duty on an officer or director and do not use the term 'fiduciary' to describe the duties or in any way speak in terms of a trust." *Thompson*, 2020 WL 2048006 at *4 (quoting *Hot Shot Kids Inc. and Pauley v. Pervis* (*In re Pervis*), 497 B.R. 612, 640 (Bankr. N.D. Ga. 2013) (Hagenau, J.)). Even though corporate managers owe duties of care to the owners of the corporation, such ordinary business relationship does not create a fiduciary capacity under § 523(a)(4). *Thompson*, 2020 WL 2048006 at *4 (citing *Pervis*, 497 B.R. at 640). Therefore, "to conclude that absent an agreement providing for such duties, all members of a business partnership are fiduciaries for purposes of Section 523(a)(4) would impermissibly exceed the scope of this dischargeability exception." *Id.* (citing *White v. White* (*In re White*), 550 B.R. 615, 622 (Bankr. N.D. Ga. 2016) (Hagenau, J.)).

The Parties' relationship is memorialized in the Agreement which does not set forth any specific contractually agreed upon fiduciary duties or speak in terms of a trust, and Defendant is not a trustee who holds an identifiable trust res for the benefit of an identifiable beneficiary. Nor does the Agreement define trust-like duties imposed on the trustee to create a technical trust such as the duty to segregate trust assets or the duty to refrain from using trust assets for a non-trust purpose. The undisputed facts show that the Parties' relationship is merely an "ordinary business relationship" whereby Defendant ran the day-to-day operations of Cornerstone and Plaintiff handled any drywall and acoustical work it accepted under the Right of

12

First Refusal provision.[2] Defendant is not a trustee and Georgia law does not impose trust-like duties on officers and directors of a corporation. As a result, this ordinary business relationship between the Parties does not create a fiduciary capacity for Defendant under § 524(a)(4) and Defendant's status as majority shareholder does not impose a heightened duty or standard. See *Thompson*, 2020 WL 2048006 at *4. Accordingly, Defendant has shown that Plaintiff cannot establish fiduciary capacity as required by § 523(a)(4). This issue being a question of law, there is no genuine dispute as to a material fact and Defendant is entitled to entry of summary judgment on Plaintiff's claim under the Fiduciary Capacity Exception.

## 2.    Embezzlement

To establish a claim of nondischargeability based on embezzlement under § 523(a)(4), the plaintiff must show that "(i) property owned by another is rightfully in the possession of the debtor; (ii) the debtor appropriate[d] the property for personal use, and (iii) the appropriation occurred with fraudulent intent or by deceit." *Ideal Development Concepts, LLC v. Gross (In re Gross)*, 639 B.R. 255, 260 (Bankr. N.D. Ga. 2022) (Hagenau, J.) (quoting *Pervis*, 512 B.R. at 382-83). "It is knowledge that the use is devoid of authorization" that makes the defendant's conversion of the property fraudulent and thus embezzlement under § 523(a)(4). *Id.* (quoting *Lenox Pines, LLC v. Smith (In re Smith)*, No. 17-67324, AP 18-5005, 2021 WL 1234245 at *10 (Bankr. N.D. Ga. March 31, 2021 (Ritchey Craig, J.)). Circumstantial evidence, concealment of evidence by defendant, and a lack of consistency or credibility in defendant's

---

[2] Plaintiff asserts in his Response to Defendant's Motion for Summary Judgment that the Court should follow *Ferraro v. Phillips (In re Phillips)*, 185 B.R. 121, 129 (Bankr. E.D.N.Y. 1995), and find that Defendant was acting in a fiduciary capacity under § 523(a)(4). [Doc. 33, pg. 8-9]. However, that case looked to New York state law to determine if a fiduciary relationship existed between the parties under § 523(a)(4). Eleventh Circuit precedent dictates that the existence of a fiduciary capacity/relationship between parties is a question of federal law. Thus, the holding in *In re Phillips* which applies New York law is inapplicable here. See *In re Forrest*, 47 F.4th at 1236. Further, to the extent state law is relevant because Cornerstone is a Georgia corporation, Georgia law is the applicable law not New York law.

testimony can be indicative of fraudulent intent. *Cook v. Knight* (*Matter of Knight*), 621 B.R. 529, 537 (Bankr. N.D. Ga. 2020) (Drake, J.). A defendant cannot commit embezzlement if the defendant is legally entitled to the funds. *Smith*, 2021 WL 1234245 at *10; see also *Cloninger v. Cloninger*, No. 1:16-CV-2386-RWS, 2017 WL 11496867, at *3 (N.D. Ga. Oct. 24, 2017); *Marbella, LLC v. Cuenant* (*In re Cuenant*), 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006).

Plaintiff does not assert that his claim for embezzlement applies to the damages for breach of contract; therefore, the Court focuses on the conduct that gave rise to damages for breach of fiduciary duty. Defendant argues that the first element necessary to establish a claim of embezzlement that "property owned by another" be misappropriated is not satisfied here, because the property at issue was not owned by Plaintiff, rather it was owned by Cornerstone. [Doc. 36, pg. 3]. Defendant asserts that "Plaintiff did not have any lawful property interest or ownership rights in specific, identifiable funds or accounts of Cornerstone… Plaintiff has not identified a single item of property, owned by Plaintiff, that was misappropriated by Defendant for his personal use." [Id. at 3-4]. In response, Plaintiff argues that Defendant's conduct satisfies the first element of embezzlement because Defendant "clearly understood that he was spending funds owed to Mr. Cox by spending Cornerstone funds." [Doc. 33, pg. 12]. Plaintiff argues further that he has established the second element of embezzlement, since Plaintiff suffered damages "because Debtor spent large sums of Cornerstone funds that should have been paid to Mr. Cox, on various personal expenses..." [Id.]. Lastly, Plaintiff asserts that the third element of embezzlement is satisfied here as Defendant "wanted to avoid 'paying Lonnie (Cox) twice'" and there was additional evidence at the Arbitration that demonstrated Defendant intended to "hide the removal of funds from Cornerstone from Mr. Cox." [Id. at 13].

"Standing to bring an embezzlement claim under § 523(a)(4) requires that the plaintiff own the allegedly embezzled property." *F&F Inv. Grp., LLC v. Case* (*In re Case*), 636

14

B.R. 852, 858 (Bankr. S.D. Fla. 2022); see also *Cuenant*, 339 B.R. at 277 ("A key element of both larceny and embezzlement is that the plaintiff must establish ownership of the property taken"). In the context of the debtor's embezzlement from a corporation, a shareholder generally may only bring a derivative suit. *Pervis*, 497 B.R. at 624. However, a shareholder may proceed individually if he "can show his injury is separate and distinct from the corporation or that the wrongdoer owes him a special duty" or "when the circumstances show that the reasons for the general rule requiring a derivative suit do not apply." *Id.* at 624-25.

The reasons that underpin the general rule requiring a derivative action are that (i) it prevents a multiplicity of lawsuits by shareholders, (ii) it protects corporate creditors by putting the proceeds of the recovery back in the corporation, (iii) it protects the interest of all shareholders by increasing the value of their shares instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and, (iv) it adequately compensates the injured shareholder by increasing the value of his shares. *Thomas v. Dickson*, 250 Ga. 772, 773 (1983).

In *Thomas,* the Georgia Supreme Court, noted the general rule that a shareholder seeking to recover misappropriated corporate funds must bring a derivative suit, but then stated that, "we believe that in exceptional situations this Court and our other state courts should look at the 'realistic objectives' of a given case to determine if a direct action is proper." *Id.* at 774. In that case, there were two shareholders and plaintiff was the one injured by the failure of the corporation to pay dividends. The court held that all interested parties, that is, creditors, other shareholders, and directors, must be considered when determining if a direct action is available. The court noted that the corporation was paying its debts as they came due such that there was no party that could be prejudiced by recovery by the minority shareholder. *Id.* The court further held that payment to the corporation to increase stock value would not benefit plaintiff as there was no market for the closely held corporation's shares. Thus, plaintiff was able to maintain a direct

15

action against the corporation for misappropriating corporate funds. See also *Reece v. Livingstone Co.* (*In re Wheland Foundry, LLC*)*,* No. 06-10904, AP No. 07-1044, 2007 WL 2934869 (Bank. E.D. Tenn. Oct 5. 2007) (stating that the Georgia Court of Appeals set forth a four-part test for determining when a derivative suit is required as follows: "(1) [w]ill the direct action result in a multiplicity of actions by other shareholders? (2) [a]re there corporate creditors in need of protection? (3) [w]ill the interests of the remaining shareholders be prejudiced by a recovery by one shareholder? and (4) [w]ould the injured shareholder be adequately compensated by a corporate recovery?) (quoting *Telcom Cost Consulting, Inc. v. Warren*, 275 Ga. App. 830, 834, 621 S.E.2d 864, 868 (2005)).

The facts here are similar. Plaintiff is the only other shareholder such that decreasing dividends through misuse of corporate funds injures only him, the shares are not generally marketable, and there is no evidence that there are creditors of Cornerstone that are not being paid. However, there is also no evidence that creditors of Cornerstone are being paid; rather the proceedings in the main case indicate both Plaintiff and Defendant believe there is significant value in Cornerstone, but this belief is not record evidence and there remains a question of fact whether creditors of Cornerstone would be injured by a recovery by Plaintiff alone such that a derivative action would be required. Thus, there is  a question of fact whether Plaintiff could establish that a direct action for embezzlement is appropriate. In addition, the Arbitrator held that Defendant used Cornerstone funds for personal expenses such as a family vacation and buying sports tickets. As noted, these findings are established here and there is a further question of fact regarding Defendant's intent while using corporate funds for improper purposes. Because there are questions of fact that could result in judgment for Plaintiff the Court will deny the Motion as to Plaintiff's embezzlement claim in Count I of the Amended Complaint.

### B. Section 523(a)(6)

Turning to Count II of the Amended Complaint, Defendant argues that he is entitled to summary judgment on Plaintiff's claim for willful and malicious injury under § 523(a)(6). A willful and malicious injury under § 523(a)(6) "is confined to acts, such as intentional torts, done with an actual intent to cause injury as opposed to acts done intentionally that result in injury." *Bracciodieta v. Raccuglia* (*In re Raccuglia*), 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011) (Brizendine, J.); see *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998). An injury is considered willful when the defendant "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Smith*, 2021 WL 1234245 at *11 (quoting *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1165 (11th Cir. 1995)). Plaintiff's subjective intent can be inferred from "surrounding circumstances." *Id.*; (citing *Walz v. Smith* (*In re Smith*), 592 B.R. 390, 395 (Bankr. N.D. Ga. 2018) (Hagenau, J.) (citation omitted)).

The Eleventh Circuit defines "malicious" as "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Maxfield v. Jennings* (*In re Jennings*), 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *Walker,* 48 F.3d at 1164 (citation omitted)). Section 523(a)(6) only addresses injuries that the defendant desired to occur by his conduct, it does not apply to a defendant's failure to meet a duty of care that then results in injury to a person. *Raccuglia*, 464 B.R. at 483. An injury resulting from negligent or reckless conduct is insufficient to satisfy the willful requirement, but a finding of reckless disregard is sufficient to establish malice. *Cloninger*, 548 B.R. at 861; *Smith*, 2021 WL 1234245 at *11 (citing *Woodman v. Carroll* (*In re Carroll*), 505 B.R. 74, 80 (Bankr. N.D. Ga. 2014) (Ellis-Monro, J.)). Malice may be implied. *Kane v. Stewart Tilghman* (*In re Kane*), 755 F.3d 1285, 1294 (11th Cir. 2014) (*citing Thomas v. Loveless* (*In re Thomas*), 288 F. App'x 547, 549 (11th Cir. 2008)).

17

Defendant asserts again that Plaintiff had the opportunity to assert this type of claim in the Arbitration but chose not to. [Doc. 29, pg. 14]. Defendant argues the Award does not include "findings of fact or conclusions of law that would support an award against Defendant for willful and malicious injury." [Id.]. The facts established in the Arbitration are preclusive in this proceeding and to the extent additional facts are necessary to establish whether the breaches established in the Award were willful and malicious a trial in this proceeding will allow the Parties to present evidence to support or undermine that proposition.

Defendant asserts further that Plaintiff does not have standing to pursue the claim because the party that suffered damages was Cornerstone, rather than Plaintiff. [Doc. 36, pg. 13]. Unliked an embezzlement claim, a willful and malicious injury claim only requires that an interest in property be injured (in a willful and malicious action) rather than requiring an ownership interest in property converted to personal use. Because of this and because a shareholder has an interest in a corporation sufficient to satisfy the interest in property required by § 523(a)(6), Plaintiff's ownership in Cornerstone satisfies the property requirement of § 523(a)(6). See, eg., *Viener v. Jacobs* (*In re Jacobs*), 381 B.R. 128, 144-7 (Bankr. E.D. Pa. 2008) (court found shareholder who held 1/3 of the corporation's outstanding stock had a property interest such that the diminution in value of his shares in the corporation was a sufficient injury under § 523(a)(6)).

Alternatively, Defendant asserts that if the Court allows Plaintiff to try the § 523(a)(6) claim, Plaintiff will have to prove that each incident was conducted specifically with malicious intent, and that any damages awarded to Plaintiff on this claim should be limited to the amount awarded in the Award for breach of fiduciary duty. [Doc. 29, pg. 14-15]. Both arguments fail because this is a dischargeability action that could not have been brought in the Arbitration. Further, as noted by Plaintiff, the Eleventh Circuit has ruled that nontortious conduct, such as a knowing breach of contract, can be nondischargeable under § 523(a)(6) depending on the

18

"'knowledge and intent of the debtor at the time of the breach[.]'" *Kane,* 755 F.3d at 1296; (quoting *Williams v. Itern. Brotherhood of Elec. Workers* (*In re Williams*), 337 F.3d 504, 510 (5th Cir. 2003)).

The breach of fiduciary duty claim resulted in a specific damage award and may sound in tort or contract. The breach of contract claim based upon the right of first refusal also resulted in a specific damage award. The clear statement from the Eleventh Circuit is that a contract right that is breached in a willful and malicious manner is sufficient under §523(a)(6). See also, *Snoke v. Riso* (*In re Riso*)*,* 978 F.2d 1151, 1153-1154 (9th Cir. 1992) (limited right of first refusal for purchase of property was not a property interest but a contract right); Norbert, CONTRACT CLAIMS AND THE "WILLFUL AND MALICIOUS INJURY" EXCEPTION TO THE DISCHARGE IN BANKRUPTCY, 88 Am. Bankr. J. 175 (Spring 2014). Because a breach of contract may constitute a willful and malicious injury, either to Plaintiff's interest in Cornerstone or to him individually, as the Arbitrator stated the right of first refusal was a promise between Defendant and Plaintiff and not between corporate entities, Defendant's argument that the injuries cannot constitute willful and malicious injuries under § 523(a)(6) is without basis and is subject to questions of material fact regarding Defendant's intent. As a result, the Court will deny Defendant's Motion as to Count II.

### C. Attorney's Fees and Punitive Damages

With respect to Count III of the Amended Complaint, Defendant asserts that he is entitled to summary judgment on Plaintiff's claim for nondischargeability of the attorney's fees[3] and punitive damages awarded in the Award. The Amended Complaint asserts that the attorney's fees and punitive damages are nondischargeable because they were awarded in connection with

---

[3] Defendant characterizes Plaintiff's claim for attorney's fees as one for "expenses of litigation," however, the Court will follow the Plaintiff's characterization of the claim as it is alleged in the Amended Complaint. [Doc. 3, ¶ 55-6].

a nondischargeable award. [Doc. 3, ¶ 55-57]. Defendant further contends he is entitled to summary judgment as to the attorney's fees because they were awarded based on conduct during the Arbitration. Defendant contends he is entitled to summary judgment as to the punitive damages because the Award says they are based on the breach of fiduciary duty claims, and the award for breach of fiduciary duty is dischargeable.

Plaintiff argues that all the debt owed to him is nondischargeable and that the arbitration would not have been necessary were it not for Defendant's bad acts. Therefore, by extension, any litigation expenses Plaintiff incurred as part of the Arbitration directly flow from Defendant's actions. Assuming Defendant is correct that the attorney's fees were awarded based on Defendant's litigation conduct, that would not necessarily foreclose a determination that they are nondischargeable.

"An award of attorney's fees in connection with a debt that is non-dischargeable is likewise non-dischargeable." *Trexler*, 2016 WL 236054 at *9 (citing *Cohen v. De la Cruz*, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219 (1998)); see also *Knight*, 574 B.R. at 811 (fees and expenses may be declared nondischargeable if "awarded in connection with an otherwise nondischargeable award, that is, they are awarded as recompense for the same conduct"); *Palloto v. Neri*, (*In re Neri*), No. 17-53022-BEM, AP 17-5125-BEM, 2018 WL 333819 (Bankr. N.D. Ga. Jan. 8, 2018) (Ellis-Monro, J.) (same). If attorney's fees are awarded in connection with a claim that includes both dischargeable and nondischargeable components, then the court may apportion the fee award accordingly. *Trexler*, 2016 WL 236054 at *9.

The Award states, "[I]n the conduct of this arbitration, [Defendant] caused [Plaintiff] unnecessary trouble and expense with regard to discovery and the production of financial data to which he was entitled, both as a minority owner and as a litigant. He has been stubbornly litigious, arguing defenses he agreed in the 'Addendum' would not be raised. His

20

conduct in this regard entitles [Plaintiff] to the recovery of his expenses of litigation." [Doc. 3, pg. 16]. The Award did not cite any authority for its award of attorney's fees; however, it tracks the language of O.C.G.A. § 13-6-11, which provides for expenses of litigation.[4]

"Cases interpreting this section [O.C.G.A. § 13-6-11] have established that intentional torts invoke a species of bad faith that entitles a plaintiff to recover the expenses of litigation, including attorney fees, because having to incur fees to collect the other damages is itself an injury flowing from the tort." *Watson*, 2019 WL 5388061 at *6; see also *Mills v. Ellerbee* (*In re Ellerbee*), 177 B.R. 731, 746 (Bankr. N.D. Ga. 1995) (Massey, J.) ("The Georgia Court of Appeals has distinguished between awards of attorney's fees based on 'bad faith' and those for 'stubborn litigiousness' or for causing 'unnecessary trouble and expense,' but in all of the cases the rationale is that the defendant inflicted additional and needless costs or damage on the plaintiff that can said to have been the consequence of the underlying tort."). Because the dischargeability of the compensatory damages remains an open question, Defendant has not shown that the attorney's fees are necessarily dischargeable. Therefore, Defendant is not entitled to summary judgment as to attorney's fees.

Turning to the claim of punitive damages, punitive damages are not always nondischargeable. *Neri,* 2018 WL 333819 at *7. O.C.G.A. § 51-12-5.1(b) (the "Punitive Damages Statute") permits the award of punitive damages for "any tort action showing 'willful misconduct, malice, fraud, wantonness, oppression, *or* the entire want of care that constitutes conscious indifference to the consequences.'" *Id.* (quoting *Allen v. Morrow* (*In re Morrow*), 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014) (Massey, J.)) (emphasis in original); see also *Summit Hosting, LLC*

---

[4] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been *stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense*, the jury may allow them." O.C.G.A. § 13-6-11 (emphasis added).

*v. Wilder* (*In re Wilder*)*,* No. 21-58597, AP No. 22-5066, 2022 WL 4002261 (Bankr. N.D. Ga. Sept. 9, 2022) (Hagenau, J.) (noting that the bases for punitive damages in the Punitive Damages Statute are disjunctive and the ground of conscious indifference to consequences does not necessarily constitute willful and malicious injury under § 523(a)(6)). The Punitive Damages Statute provides for damages in cases of fraud where the debt would be excepted from discharge along with cases that do not render a debt nondischargeable. *Morrow*, 508 B.R. at 522; *see also St. Laurent*, 991 F.2d at 680 ("[s]ection 523(a)(2)(A) … excepts from discharge that part of a judgment for fraud consisting of punitive damages"); *Apel v. Campbell* (*In re Campbell*), No. 18-40400, AP 18-4013, 2019 WL 2486854, at *5 (Bankr. N.D. Ga. June 13, 2019) (Ellis-Monro, J.) ("[b]ecause punitive damages were awarded in an action for fraud they are also nondischargeable").

Defendant argues that the basis for the punitive damages awarded in the Arbitration was for mere "bad faith," "intentional violations of fiduciary duties," or "stubborn litigiousness," which does not rise to the degree of severity contemplated by the willful and malicious standard of § 523(a)(6) such that the award for punitive damages is dischargeable. [Doc. 29, pg. 21].

The Award states, "[Defendant's] conduct with respect to use of corporate funds for his personal benefit and his disparate treatment of shareholder distributions must be classified as intentional and in bad faith, justifying the imposition of punitive damages." [Doc. 3, pg.16]. A claim for breach of fiduciary duty can be characterized as an intentional tort and can therefore be the basis of punitive damages. *Velazquez v. Mata*, 366 Ga. App. 219, 222 881 S.E.2d 467, 471 (2022). Therefore, it is possible that Plaintiff could show that the punitive damages were awarded due to willful and malicious conduct. The Court concludes that questions of material fact remain

22

regarding the dischargeability of attorney's fees and punitive damages. Thus, the Motion will be denied as to Count III of the Amended Complaint.

In conclusion, because the undisputed facts do not foreclose Plaintiff from prevailing on his claims under §§ 523(a)(4) and (a)(6), and as to dischargeability of attorney's fees and punitive damages, Defendant is not entitled to summary judgment on Counts I (in part), II, and Count III of Plaintiff's Amended Complaint.

In accordance with the foregoing, it is now,

ORDERED that Defendant's Motion for Summary Judgment is DENIED as to Count II and Count III of the Amended Complaint. It is further,

ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part as to Plaintiff's Count I as follows, summary judgment is granted to Defendant on Plaintiff's claim for fraud or defalcation while acting in a fiduciary capacity and denied as to Plaintiff's claim of embezzlement under § 523(a)(4) of the Amended Complaint.

**END OF ORDER**

**<u>Distribution List</u>**

Lonnie Cox
3754 Lavista Road
Suite 250
Tucker, GA 30084

Michael D. Robl
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084

Joseph Andrew Corona
322 Narroway Trail
Dallas, GA 30132

Scott B. Riddle
Law Office of Scott B. Riddle, LLC
Suite 1800
3340 Peachtree Road, NE
Atlanta, GA 30326